IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01145-KLM

GATES CORPORATION,

    Plaintiff,

v.

CRP INDUSTRIES, INC.,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Rule 12(b)(6) Motion to Dismiss** [#54][1] (the "Motion"). Plaintiff filed a Response [#55] in opposition to the Motion to Dismiss, and Defendant filed a Reply [#56]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#54] is **DENIED**.[2]

## I. Background[3]

**A.**     **Factual Background**

---

[1] "[#54]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout the Order.

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c). *See Consent Form* [#18].

[3] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Plaintiff is a Delaware corporation that manufactures power transmission belts and fluid power products that are used in diverse industrial and automotive applications. *Am. Compl.* [#49] ¶ 8. Defendant is a New Jersey corporation that distributes and sells automotive and other industrial products. *Id.* ¶ 9. The parties are direct competitors. *Id.*

Plaintiff has created an electronic database of confidential business information, which Plaintiff describes as the "backbone of [its] sales." *Id.* ¶¶ 10, 13. The database includes information about products that Plaintiff plans to offer before the information is made public, as well as valuable market research. *Id.* ¶ 13. The database also stores Vehicles in Operation ("VIO") data, which is non-public, proprietary data for which Plaintiff pays an annual premium to access from another source. *Id.* ¶ 12. Plaintiff's database is stored in a password-protected file on a password-protected server. *Id.* ¶¶ 10-11. Certain employees are given access to the database after they have signed confidentiality agreements, and unauthorized or anonymous access is not permitted. *Id.* ¶ 11. Select customers are permitted to access only certain classes of information in the database. *Id.* Plaintiff pays researchers a combined salary of over $50,000 per month to keep the information updated. *Id.* ¶ 13.

Laura Bale ("Bale") was Plaintiff's employee for 25 years. *Id.* ¶ 15. While employed by Plaintiff, Ms. Bale developed software and was involved with storage of the automotive parts list in the database. *Id.* She was assigned a personal username and password to access the database. *Id.* On August 25, 2009, Plaintiff terminated Ms. Bale's employment, at which time her username and password were deactivated and she signed an "Employee Termination Statement," which stated her agreement to turn over all confidential and trade secret information to Plaintiff and agreed not to share that

information with anyone.  *Id.* ¶16.

Ms. Bale began working for the Defendant in February 2010.  *Id.* ¶17.  Plaintiff sent Ms. Bale a letter on February 15, 2010, reminding her to keep Plaintiff's information confidential.  *Id.*  Plaintiff copied Defendant on the letter.  *Id.*  Two years later, on February 8, 2012, Plaintiff became aware that Ms. Bale had unlawfully accessed Plaintiff's database.  *Id.* ¶18.  Ms. Bale's former supervisor, David Haun ("Haun"), received an e-mail from Ms. Bale that attached VIO data and had the subject line "Present," with text that read "Check this out . . . [.]"  *Id.*  Mr. Haun suspected that the e-mail was intended for David Hirschhorn ("Hirschhorn"), Defendant's Director of Brand Management who was Ms. Bale's supervisor at the time, and that Plaintiff had unlawfully accessed Plaintiff's database and attempted to send the information to Mr. Hirschhorn.  *Id.* ¶¶ 19, 20.  Mr. Haun confirmed that the attachment to the e-mail contained information that matched VIO data, and on reviewing the server logs, discovered that the same IP address in the header of Ms. Bale's e-mail had been used on several previous occasions to access Plaintiff's server.  *Id.* ¶ 20.  Plaintiff thereafter notified the Federal Bureau of Investigations ("FBI"), which commenced an investigation.  *Id.* ¶ 21.

On March 16, 2012, approximately one month after Plaintiff discovered Ms. Bale's unlawful database access, Plaintiff sent a letter to Defendant's President, informing him of the e-mail that Plaintiff had received from Ms. Bale and asking whether Defendant possessed any software or other information that Ms. Bale had downloaded.  *Id.* ¶ 52.  On April 29, 2012, Plaintiff received a response letter stating that Defendant was investigating the matter.  *Id.* ¶ 53.  On June 6, 2012, Defendant followed up and informed Plaintiff that (1) the investigation was complete and Defendant had confirmed that no one affiliated with

Defendant had downloaded and/or used the confidential information referenced in Plaintiff's letter, (2) Defendant did not have any record of the confidential information in either electronic or hard copy form, and (3) Ms. Bale had represented to Defendant that she had not used or disclosed any of the confidential information referenced in the March 16, 2012 letter. Lastly, Defendant informed Plaintiff that Ms. Bale was no longer employed by Defendant. *Id.*

Defendant later released a new product line of hoses that consisted mostly of products that Plaintiff did not offer. *Id.* ¶ 54. Plaintiff became suspicious that Defendant had in fact used the information gleaned by Ms. Bale, because "it would have taken a substantial amount of time and money to create such a product line without access to [Plaintiff's] trade secrets." *Id.* On January 10, 2013, Plaintiff's counsel wrote to Defendant's counsel informing them of Plaintiff's suspicions and requesting that Defendant undertake a new investigation. *Id.* ¶ 55. On January 24, 2013, Defendant responded that it had confirmed that none of Plaintiff's data referenced in the letters had been used in the development of Defendant's hoses or any other product line. *Id.* ¶ 56.

After the FBI and the United States Attorneys' Office completed their investigation in the spring of 2016, the United States Attorneys' Office provided Plaintiff with a draft statement of facts, where it was allegedly revealed that Defendant was involved in the unlawful accessing and downloading of Plaintiff's trade secrets. *Id.* ¶ 58. On May 11, 2016, Ms. Bale pled guilty to unauthorized access to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(2)(C) and 1030(c)(2)(B). *See id.* ¶ 1; *see also United States v. Laura Bale*, No. 16-cr-00112-WJM.

B.   **Procedural Background**

Plaintiff filed the Complaint [#1] initiating this action on May 17, 2016. The Court granted Plaintiff's request for leave to amend, and on April 10, 2017, Plaintiff filed the Amended Complaint [#49]. Plaintiff raises four claims: (1) misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act ("CUTSA"), (2) a Colorado tort claim for misappropriation of business value, (3) a Colorado tort claim for interference with a contract, and (4) a federal claim under the Computer Fraud and Abuse Act. *See generally Am. Compl.* [#49]. Plaintiff seeks a preliminary and permanent injunction prohibiting Defendant from using any of Plaintiff's trade secret information and mandating that Defendant return any such information in its possession. Plaintiff also demands compensatory damages, punitive damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest on any award of damages. *Id.* at 25.

Defendant filed the Motion [#54] on April 24, 2017. Defendant argues that all four of Plaintiff's claims fail because they are each barred by the applicable statutes of limitations, and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Motion* [#54] at 11-18. In the alternative, Defendant argues that Plaintiff's misappropriation of business values and tortious interference with contract claims should be dismissed because they are preempted by the CUTSA claim, as all three claims arise out of the same facts. *Id.* at 18-19.

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon

which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

### III. Discussion

**A.    Whether Plaintiff's Claims are Barred by Applicable Statutes of Limitations**

"If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" *Jones v. Bock*, 549 U.S. 199, 215 (2007). Defendant argues that each of Plaintiff's claims are

barred by the applicable statutes of limitations. Specifically, Defendant explains that, based on Plaintiff's allegations, Plaintiff had discovered by January 2013 all of the following information: (1) Ms. Bale had accessed Plaintiff's database without authorization, (2) Ms. Bale intended to send information obtained from the database to her supervisor, (3) Defendant used the database to gain a competitive advantage in developing a new line of hoses, (4) Defendant did not conduct a thorough investigation following Plaintiff's counsel's letter, and (5) that the circumstances were "highly suspicious" such that Plaintiff was considering litigation. *Motion* [#54] at 12. Defendant is largely referring to information contained in two letters sent by Plaintiff's counsel to Defendant. The March 16, 2012 letter alerted Defendant that Plaintiff had received the misdirected e-mail from Ms. Bale and asked if Defendant possessed any of the information that Ms. Bale had downloaded. *Am. Compl.* [#49] ¶ 52. The January 10, 2013 letter stated Plaintiff's suspicions that information had in fact been used by Defendant because Defendant's new product "filled a gap" in Plaintiff's product line, and requested that Defendant undertake a new investigation. *Id.* ¶ 55. Defendant asserts that the content of these letters demonstrates that Plaintiff had actual knowledge of sufficient facts to assert its claims by January 2013 at the latest. Thus, according to Defendant, Plaintiff's claims first asserted in the Complaint [#1] filed on May 17, 2016, are therefore barred by the applicable statutes of limitations. *Id.*

With the exception of Plaintiff's federal claim under the Computer Fraud and Abuse Act, the Court applies Colorado law to determine the applicable statutes of limitations and whether a particular statute of limitations bars a claim. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . . [a]nd whether the

law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.").

### 1. State Law Claims

"Whether a [Colorado] statute of limitations bars a particular claim is a question of fact," but the issue may be decided as a matter of law "if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date." *Burns v. Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *11 (D. Colo. Mar. 26, 2014) (citing *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005)). Generally, a cause of action is considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence. Col. Rev. Stat. Ann. § 13-80-108(1). "The critical inquiry of when an action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which the action may be brought." *Gognat v. Ellsworth*, 224 P.3d 1039, 1045 (Colo. Ct. App. 2009) (quotation marks and citations omitted).

#### a. Trade Secret Misappropriation Claim

Plaintiff's trade secret misappropriation claim under CUTSA is subject to a three-year statute of limitations. *See* Colo. Rev. Stat. § 7-74-107. "[T]he statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation rather than independent development, but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer misappropriation." *Id.* (citation and quotation marks omitted). Thus, because Plaintiff initiated this lawsuit on May 17, 2016, the issue here is whether Plaintiff's allegations demonstrate that it had knowledge of sufficient facts to assert its claim prior to May 17,

2013.

Defendant argues that Plaintiff knew of the essential facts of trade secret misappropriation prior to January 2013 at the latest, based on the letters that Plaintiff sent to Defendant stating its suspicions and requesting that Defendant conduct an investigation. *Motion* [#54] at 14. Plaintiff argues that it did not have sufficient knowledge of the conduct of Defendant's management until the spring of 2016 when the FBI and United States Attorneys' Office completed their investigation of Ms. Bale and provided Plaintiff with a draft statement of facts. *Response* [#55] at 8.

Importantly, Plaintiff's claims in this matter are based on the alleged conduct of *Defendant*, not Ms. Bale. Plaintiff's allegation that it discovered that Ms. Bale had accessed the database in February 2012 does not suggest or confirm that Plaintiff was aware that confidential information had been sent to or shared with Defendant's other employees or management at that time. *See Am. Compl.* [#49] ¶ 21. Plaintiff's letters of March 16, 2012, and January 10, 2013, also do not demonstrate that Plaintiff had "knowledge of sufficient facts from which a reasonable jury could infer misappropriation." *See id.* ¶ 37; Colo. Rev. Stat. § 7-74-107. For example, Defendant references the January 10, 2013 letter, where Plaintiff's counsel represented that it had "substantial circumstantial evidence that [Defendant] not only may have gained access to this information but also may have actually used this information in connection with its business strategy." *Motion* [#54] at 14; *January 10, 2013 Letter* [#12-6].[4] The letter continues, "Most recently, [Plaintiff] has

---

[4] Generally, a court cannot consider facts supported by documents other than the complaint on a motion to dismiss, unless the motion to dismiss is converted into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, one exception is when outside documents are both central to the plaintiff's claims and the plaintiff refers to the

learned that [Defendant] may have used [the] database, in part, to formulate [Defendant's] new line of hoses. Thus, it seems likely that [Ms. Bale] communicated Plaintiff's database to someone . . . and the database was actually used to [Defendant's] competitive advantage." *January 10, 2013 Letter* [#12-6]. Plaintiff also acknowledged that "it is theoretically possible that [Defendant] deduced this information from public sources," although that process would have been "painstaking." *Id.*

These allegations do not demonstrate that Plaintiff had "facts essential to the cause of action" by the time it wrote the January 10, 2013 letter. Plaintiff's statement in the letter that it had "substantial circumstantial evidence" of access to and use of Plaintiff's trade secrets is tempered by its other statements that Defendant "may" have accessed and used the trade secrets, that it "seems likely" that Ms. Bale communicated the information to Defendant because Defendant produced a new line of hoses, and that it is "theoretically possible" that Defendant could have deduced the information from public sources. *January 10, 2013 Letter* [#12-6]. Plaintiff's statements that it had suspicions but that Defendant could have done the market research in order to produce its new line of hoses, and that Plaintiff did not know whether Ms. Bale had ever successfully transmitted information to Defendant, do not show that Plaintiff had knowledge of the essential facts from which a reasonable jury could infer misappropriation. *See Gognat*, 224 P.3d at 1045.

Defendant cites to *Gognat*, where the state court found that time started running on the plaintiff's trade secret misappropriation claim "when he first had reason to know that

---

documents in the complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, Plaintiff refers to the January 10, 2013 letter in the Complaint, the letter is central to whether Plaintiff's claims are barred by the statutes of limitations, and Defendant does not dispute its authenticity. *See id.*

defendants had misappropriated a trade secret." *Motion* [#54] at 14. However, in *Gognat*, the plaintiff admitted during a deposition that he had *known* that the defendants had begun acquiring leases "based on" plaintiff's trade secrets, and that he *knew* that defendants were misusing his trade secrets. *Gognat*, 224 P.3d at 1047. Here, Plaintiff only knew that it had *intercepted* an e-mail from Ms. Bale that appeared to be directed to Defendant (meaning that Defendant never received the e-mail), and that Defendant may have either used trade secrets in developing its line of hoses, or may have spent substantial time and money to create such a product line itself. *Am. Compl.* [#49] ¶ 18-19, 54. Furthermore, Plaintiff was told by Defendant in its responses to the letters that Defendant had confirmed through its investigation that no one affiliated with Defendant had downloaded, used, or kept the information at issue, and that "[n]one of [Plaintiff's] confidential information . . . was used in the development" of the hose line. *See Am. Compl.* [#49] ¶¶ 53, 56. These facts do not indicate that Plaintiff knew of the essential facts regarding misappropriation prior to May 2013.

Lastly, the Court must address the issue of whether Plaintiff should have known of the essential facts regarding misappropriation prior to May 2013. Taking Plaintiff's allegations as true, it does not appear that Plaintiff should have had knowledge of Defendant's involvement. *See Gognat*, 224 P.3d at 1045. Plaintiff was diligent in acting on its discovery of the misdirected e-mail, and Plaintiff thereafter followed up through several letters to Defendant, and relied on Defendant's assurances that its employees had not accessed, used, or retained Plaintiff's trade secrets. *Am. Compl.* [#49] ¶¶ 21, 52, 53, 55, 56. Thus, the Court concludes that the allegations do not demonstrate that Plaintiff should have known of Defendant's involvement in Ms. Bale's conduct at an earlier date.

Plaintiff has sufficiently alleged that its claims did not accrue until spring 2016. *See Jones*, 549 U.S. at 215.

Accordingly, the Court **denies** the Motion [#54] with respect to this claim.

### b. Tort Claims

Next, the Court addresses Plaintiff's tort claims for misappropriation of business values and tortious interference with contract, which both have a two-year statute of limitations. *See* Col. Rev. Stat. Ann. § 13-80-102. "[A] cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(1). Defendant raises the same argument previously addressed – that Plaintiff admitted that it had knowledge regarding the involvement of Defendant's management as early as March 2012 and as late as January 2013. *Motion* [#54] at 15. For the same reasons discussed above, the Court finds that the allegations of the Amended Complaint do not demonstrate that these claims are barred by the statute of limitations. *See Gognat*, 224 P.3d at 1045. Rather, the allegations support Plaintiff's argument that it was not aware of Defendant's involvement in misappropriation of business value, or interference with a contract, until spring 2016.

Accordingly, the Court concludes that Plaintiff's tort claims are not barred by the applicable statutes of limitations and the Motion [#54] is **denied** with respect to these claims.

### 2. Computer Fraud and Abuse Act

Next, the Court addresses Plaintiff's sole federal claim, which Plaintiff brings

pursuant to the Computer Fraud and Abuse Act.  For this type of claim, the two-year statute of limitations begins to run on the "date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g).  As with the other claims, Plaintiff alleges that it was not aware of Defendant's involvement until the spring 2016.

Defendant cites to a case from the Eastern District of Louisiana to support its argument that the statute of limitations has run.  *Motion* [#54] at 15; *see Higgins v. NMI Enterprises, Inc.*, No. 09-6594, 2013 WL 27556, at *9 (E.D. La. Jan. 2, 2013).  In *Higgins*, the defendant claimed that the plaintiffs had full knowledge of the alleged violations when they filed a Citizens' Complaint based on their suspicions that the defendant had misappropriated an email password.  The court stated that it was "unreasonable for Plaintiffs to claim that they only became aware of any damage after the Department of Justice investigation, when it was their Citizens' Complaint that triggered that investigation and they admit they suspected [defendant] the whole time." *Id.*  First, *Higgins* has no precedential weight in the District of Colorado.  Further, the facts in *Higgins* differ in a critical way from the present matter.  Here, Plaintiff does not allege that its report to the FBI that led to an investigation was made based on suspicion of Defendant's actions – rather, the report was based on suspicion regarding the actions of Ms. Bale. *Am. Compl.* [#49] ¶ 23.  Plaintiff does not allege that it had knowledge of Defendant's involvement at that time.  Thus, the Court again concludes that Plaintiff's allegations do not show that it discovered or should have discovered Defendant's involvement prior to the running of the statute of limitations.  *See Gognat*, 224 P.3d at 1045.

Accordingly, the Court concludes that Plaintiff's Computer Fraud and Abuse Act claim is not barred by the statute of limitations and the Motion [#54] is **denied** with respect

to this claim.[5]

**B.     Whether Plaintiff's Tort Claims are Preempted**

Defendant also argues that Plaintiff's claims for misppropriation of business values and tortious interference with contract are preempted by the misappropriation of trade secrets claim raised under CUTSA. *Motion* [#54] at 18-19.

This Court has rejected the contention that state law tort claims which arise from a set of circumstances that happen to involve purported trade secret misappropriation are uniformly preempted by CUTSA. *See Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996). Rather, claims are preempted when they "are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Id.* (internal citation omitted). Preemption does not bar every claim arising from the same set of facts. "Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets," and further, "a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the [C]UTSA." *Id.*

With respect to the unfair misappropriation of business values claim, the Amended Complaint alleges that Defendant unfairly misappropriated the "labor, skill, and money" that Plaintiff spent in developing its software, Gates Database, VIO data, and automotive-parts product line when Defendant "acquired and used [Plaintiff's] trade secrets" to develop the

---

[5] Because of the Court's conclusion that the statutes of limitations did not begin to run until spring 2016, the Court does not address the parties' arguments with respect to each claim regarding tolling.

hose line. *Am. Compl.* [#49] ¶¶ 72, 73. Plaintiff's allegation that Defendant unfairly misappropriated "labor, skill, and money" expended by Plaintiff on developing its various business tools is separate from misappropriation of the trade secrets themselves. *See Powell Prods.*, 948 F. Supp. at 1474 (stating that "a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the [C]UTSA"). Rather, the misappropriation of "labor, skill, and money" does not necessarily rely on the existence of a legally cognizable trade secret. *See id.* Thus, the claim does not rely on the same facts alleged to support the CUTSA claim, and therefore is not preempted. *See id.* Accordingly, the Motion [#54] is **denied** with respect to Plaintiff's unfair misappropriation of business values claim.

Defendant also argues that Plaintiff's tortious interference with contract claim is preempted because it is based on the same allegations as the CUTSA claim. *Motion* [#54] at 18-19. Plaintiff argues that the essence of this claim is that Defendant induced Ms. Bale to breach her confidentiality obligations to Plaintiff, and that it is irrelevant that the contract was breached by the disclosure of trade secrets. *Response* [#55] at 19. Employing the appropriate fact-driven approach set out in *Powell*, preemption is not appropriate with respect to this claim because the underlying facts supporting Plaintiff's claim for tortious interference are not merely a restatement of the facts alleged to support the trade secret misappropriation claim. *See Powell Prods.*, 948 F. Supp. at 1474. Rather, interference with a contract involves consideration of different elements. Here, the contract at issue is the Employee Termination Statement that Ms. Bale and Plaintiff signed, which contained non-disclosure provisions. Plaintiff's Amended Complaint alleges that Defendant knew of

the contract and intentionally induced Ms. Bale to breach the contract by obtaining and sending trade secrets to members of Defendant's management team. *Am. Compl.* [#49] ¶¶ 77-79. In contrast, the misappropriation of trade secrets claim does not require that Defendant had knowledge of any contract between Plaintiff and Ms. Bale. Thus, the tortious interference with contract claim is not preempted because it includes an element that does not need to be proven for the CUTSA claim. *See Powell Prods.*, 948 F. Supp. at 1474. Accordingly, the Motion [#54] is **denied** with respect to Plaintiff's tortious interference with contract claim.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#54] is **DENIED**.


Dated: November 28, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge